**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MICHELLE SKINNER,

        Plaintiff,

vs.                                                                          Case No. 6:11-cv-1760-ORL-37KRS

LEGAL ADVOCACY CENTER OF
CENTRAL FLORIDA, INC. and
COMMUNITY LEGAL SERVICES
OF MID-FLORIDA, INC.,

        Defendants.

**ORDER**

This cause is before the Court on the following:

1) Plaintiff's Verified Motion to Vacate Order of Dismissal (Doc. No. 26), filed on June 14, 2012;

2) Memorandum in Opposition to Plaintiff's Verified Motion to Vacate Order of Dismissal (Doc. No. 27), filed on June 22, 2012; and

3) Defendant Legal Advocacy Center of Central Florida, Inc.'s Memorandum in Opposition to Plaintiff's Verified Motion to Vacate Order of Dismissal (Doc. No. 29), filed on June 28, 2012.

**BACKGROUND**

**A.    Procedural History**

On November 11, 2011, Michelle Skinner ("Plaintiff") filed a Complaint in this Court against Legal Advocacy Center of Central Florida, Inc. ("Legal Advocacy Center") and Community Legal Services of Mid-Florida, Inc. ("Community Legal Services") (together, "Defendants") for violations of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

("FMLA") (Doc. No. 1.) On April 5, 2012, the Court issued an Order requiring Plaintiff to show cause why the case should not be dismissed for her failure to file a joint Case Management Report and otherwise prosecute the action. (Doc. No. 19.) On April 20, 2012, Earnest A. DeLoach, Jr. filed a "limited appearance" of record "for the purpose of early mediation" on behalf of Plaintiff. (Doc. No. 20, p. 1.) Mr. DeLoach also filed "Plaintiff's Response to Court's Order to Show Cause," in which he requested the Court allow Plaintiff ten (10) days to file her Case Management Report. (Doc. No. 21, p. 2.) The Court granted Plaintiff's request and ordered her to file a Case Management Report on or before May 11, 2012. (Doc. No. 22.)

On May 2, 2012, Defendant Community Legal Services filed a Motion to Strike Plaintiff's counsel's Limited Notice of Appearance because Local Rule 2.03(d) provides that a party who previously elected to appear "in proper person" is not permitted to "obtain special or intermittent appearances of counsel except upon such conditions as the Court may specify." (*See* Doc. No. 24.) Plaintiff did not respond to the Motion to Strike. On May 22, 2012, Magistrate Judge Spaulding granted the Motion, finding that Mr. DeLoach's Notice of Limited Appearance was improper. (Doc. No. 24.) Judge Spaulding directed the Clerk to strike the Notice, and to remove Mr. DeLoach from the docket "as he is not counsel of record." (*Id.* at p. 2.)

Judge Spaulding ordered Plaintiff to "provide the Court in writing with her physical mailing address, telephone number and email address, for the purposes of contacting her regarding matters in this case" on or before May 31, 2012. (*Id.*) Additionally, Judge Spaulding informed Plaintiff that she would be "responsible for representing herself in this case, including abiding by all rules and orders of the Court unless and until counsel enters

2

a general appearance on her behalf," and reminded her that **"she was required to confer with counsel for Defendants and file a Case Management Report on or before May 11, 2012."** (*Id.* (emphasis added).)

On May 23, 2012, upon review of the record, the undersigned dismissed the action for Plaintiff's failure to file a Case Management Report, and directed the Clerk to close this case file. (Doc. No. 25.) On June 14, 2012, Mr. DeLoach filed the Verified Motion to Vacate Order of Dismissal (Doc. No. 26) ("Motion to Vacate"). Defendants filed separate responses in opposition. (*See* Doc. Nos. 27, 29.)

### B.     The Parties' Factual Representations

In the Motion to Vacate, Plaintiff states that she first consulted with Mr. DeLoach on February 8, 2012, "regarding possible engagement to represent her in the pending matter." (Doc. No. 26, ¶ 2.) On February 22, 2012, Mr. DeLoach contacted Defendants' counsel regarding early mediation. (*Id.* at ¶ 3.) Plaintiff "engaged" Mr. DeLoach as counsel "on April 14, 2012," and he electronically filed the Notice of Limited Appearance (previously at Doc. No. 20) on April 20, 2012. On April 19, 2012, Plaintiff's counsel "learned that counsel for [Defendant Legal Advocacy Services] . . . would be unavailable due to maternity leave . . . and began to attempt to determine" who would serve as substitute counsel. (*Id.* at ¶ 6.) According to Defendant Legal Advocacy Services, on April 26, 2012, he contacted them to determine "who was handling the matter," in light of lead counsel's maternity leave. (Doc. No. 29, ¶ 4.) "After that call, [however,]. . . Attorney DeLoach never attempted to schedule a meeting to discuss the Case Management Report." (*Id.*)

3

On May 10, 2012, the day before the Case Management Report was due,[1] another attorney from Plaintiff's counsel's office sent an e-mail attaching the proposed Case Management Report to Defendant Legal Services at "4:50 p.m." (*Id.* at ¶ 5.) "There was no indication of any urgency . . . and no mention the [R]eport was due the next day." (*Id.; see also* Doc. No. 29-1 (Ex. A).) Defendant Community Legal Services received a similar e-mail at "4:36 p.m." that day, but "the e-mail contained no attachment, and no proposed Case Management Report was otherwise provided." (Doc. No. 27, p. 8.) According to Defendant Community Legal Services, neither Plaintiff nor her counsel made any "attempt to schedule the requisite meeting of counsel to prepare the Case Management Report prior to this e-mail." (*Id.*)

Plaintiff's counsel maintains that in the May 10, 2012 e-mail, he "requested that defense counsel respond with any objections" to the proposed Case Management Report. (Doc. No. 26, ¶ 8.) "Having not received any response, . . . on May 21, 2012, [Plaintiff's counsel] contacted [Defendants'] counsel to offer a final opportunity to comment on the draft," but again received no response. (*Id.* at ¶ 9.) Contrary to this assertion, Defendant Community Legal Services maintains that it provided comments regarding the Case Management Report "on May 22, 2012" at 7:26 a.m. (Doc. No. 27, p. 8.)

Plaintiff represents to the Court that on "May 22 and 23, 2012" (when Judge Spaulding entered the Order striking Mr. DeLoach's Notice of Limited Appearance (Doc. No. 24), and the undersigned entered the Order of Dismissal (Doc. No. 25)), her counsel

---

[1] The May 11, 2012 deadline to file the Case Management Report was pursuant to the Court's April 27, 2012 Order granting Plaintiff's request for an enlargement of time to file the Report. (Doc. No. 22.) The Case Management Report was initially due on or before February 16, 2012.

4

was unavailable because he "conducted three depositions outside of [his] office." (*Id.* at ¶ 12.) The next day, on May 24, 2012, he "argued a hearing in Orange County, Florida Circuit Court and then departed with his family to Palm Beach, Florida for the Memorial Day Holiday." (*Id.* at ¶ 13.) Plaintiff contends that her counsel "did not learn of the Order striking [his] Limited Notice of Appearance" until May 29, 2012– after the Memorial Day holiday, when he returned to the office." (*Id.* at ¶ 14.) Meanwhile, Plaintiff was also out of town, and did not retrieve the Order of Dismissal from her post office box until June 1, 2012. (*Id.* at ¶ 15.)

Based on the foregoing facts, Plaintiff maintains that this Court should exercise its discretion under Federal Rule of Civil Procedure ("Rule") 60(b)(1), and vacate its Order dismissing this case. In short, she contends that at the time of the dismissal, she was in the process of both preparing her Case Management Report and attempting to schedule an early mediation of the matter. "But for delays associated with the designation of temporary replacement counsel for [Defendant Legal Advocacy Services] and awaiting contributions from defense counsel regarding the Case Management Report– circumstance[s] amounting to excusable mistake, inadvertence, or excusable neglect– the Report would have been filed." (Doc. No. 26, ¶ 23.) Finally, Plaintiff adds that her counsel's "unavailability during the week the Court rendered its Orders striking his Limited Notice of Appearance and dismissing Plaintiff's Complaint certainly contributed to [her] failure to properly respond to the Court." (*Id.* at ¶ 25.)

## DISCUSSION

A.  **Relevant Standards**

Rule 60(b)(1) provides in relevant part: "On motion and just terms, the court may

5

relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . . " "Rule 60(b) motions are directed to the sound discretion of the district court." *Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848, 849 n.2 (11th Cir. 1996). "Rule 60(b) is a remedial rule that 'should be liberally construed in order to do substantial justice.' . . . This concern is most compelling when the court has not reached the merits of the case." *U.S. v. Real Prop. and Residence Located at Route 1, Box 111, Firetower Rd.,* 920 F.2d 788, 792 (11th Cir. 1991) (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Unit A 1981); *Solaroll Shade and Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986)).

In *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382-83, 398-99 (1993), the Supreme Court of the United States set forth a four-factor test courts must employ to determine whether a party's neglect of a deadline is excusable. These factors include: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *See id.* (quotation and alteration omitted).

Recently, the Eleventh Circuit explained:

"[F]or the purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a deadline is attributable to negligence." *Cheney*, 71 F.3d at 850 (citation omitted). "[W]hether a party's neglect of a deadline may be excused is an equitable decision turning on all relevant circumstances surrounding the party's omission." *Id.* (quotation omitted).

\*\*\*

> Nevertheless, both the Supreme Court and this Court have emphasized that represented parties are not entitled to relief simply because they were penalized by the omissions of counsel. *See Pioneer*, 507 U.S. at 382-83; *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993).

*U.S. v. Davenport,* 668 F.3d 1316, 1324-25 (11th Cir. 2012). District courts in this Circuit have generally determined that "an attorney's negligence alone" does not qualify for relief under Rule 60(b)(1). *See Lender v. Unum Life Ins. Co. of Am., Inc.*, 519 F. Supp. 2d 1217, 1223 (M.D. Fla. 2007) (collecting cases). However, there is recent Eleventh Circuit precedent finding that "untimely filing caused by inadvertence, mistake, or carelessness may still constitute 'excusable neglect.' " *Yang v. Bullock Fin. Grp., Inc.*, 435 F. App'x 842, 843-44 (11th Cir. July 22, 2011) (citing *Adv. Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1324 (11th Cir. 1996) (*Riney I*)).[2]

In *Yang,* for example, the Eleventh Circuit relied in part on its *Cheney,* 71 F.3d 848, opinion, in which it "suggested that untimely filing was excusable because the movant's two attorneys failed to communicate with each other about who was responsible for filing." *Id.* Based on the circumstances in *Yang*, it remanded to the district court, instructing, "Rather than focusing on the merits of the underlying action, the district court should have made specific findings regarding the legitimacy of the reason for the delay and the risk of adverse consequences resulting from the delay itself." *Id.*

In *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1355-56 (11th Cir. 2009), the Eleventh Circuit reviewed a district court decision denying a motion

---

[2] The Court considers unpublished Eleventh Circuit opinions persuasive authority, although it does not rely on such cases as binding precedent. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."); *Borden v. Allen*, 646 F.3d 785, 808 n.27 (11th Cir. 2011).

7

to vacate judgment because a plaintiff failed to comply with four court orders and failed to respond to the defendant's motion to dismiss, even though it was undisputed that "[p]laintiff's counsel received three of the orders electronically and received a paper copy of the motion by mail." Although the district court found that "these circumstances did not constitute excusable neglect," it did "not even consider the *Pioneer* factors." *Id.* (citing *Cheney,* 71 F.3d at 850). Upon its own consideration of the *Pioneer* factors,[3] the Eleventh Circuit explained:

> While it is true that this circuit recognizes that an attorney's misinterpretation of the law does not constitute excusable neglect, *see Adv. Estimating Sys., Inc. v. Riney,* 130 F.3d 996, 998 (11th Cir.1997) (*Riney II*)[4] (holding that "attorney's misunderstanding of the plain language of a [court] rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline"); *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (concluding that the district court did not abuse its discretion in denying the plaintiff's motion where counsel's interpretation of Fed. R. Civ. P 6(e) was contrary to case law), Plaintiffs' counsel's error is properly characterized as a mistake of fact rather than a mistake of law. For that reason, the facts in this case are more like those in *Cheney*, where "[t]he reason for the delayed filing was a failure in communication between the associate attorney and the lead counsel," than those in [*Riney II*] or *Cavaliere*.

*Id.* (citations omitted); *see Davenport,* 668 F.3d at 1324 ("While an attorney error based

---

[3] "When a district court applies an improper legal standard in evaluating a claim of excusable neglect, [the Eleventh Circuit] may choose to either remand the case for application of the proper standard, or may apply the proper standard in the first instance." *Yang,* 435 F. A'ppx at 843 (citing *Riney I,* 77 F.3d at 1325).

[4] In *Riney II,* 130 F.3d at 998, the Eleventh Circuit held: "Today, we follow the other circuits and hold, as a matter of law, that an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline. Nothing in *Pioneer* indicates otherwise, and we believe that the law in this area remains as it was before *Pioneer*." This action is distinguishable from *Riney II* because Plaintiff does not purport to have misunderstood the plain language of a rule or law.

8

on a misunderstanding or misinterpretation of the law generally cannot constitute excusable neglect, a mistake of fact, such as miscommunication or a clerical error, may do so under the pertinent factors.") (citations omitted).

On the other hand, the Eleventh Circuit found that the district court did not abuse its discretion in dismissing a complaint with prejudice for lack of prosecution and failure to comply with court orders where the plaintiff "submitted his original complaint in December 2003, but by July 2005, had still not contacted the defendants about filing the case management report, even after being told repeatedly to do so." *McIntosh v. Gauthier,* 182 F. App'x 884, 887 (11th Cir. 2006). The *McIntosh* court concluded, "The length of this litigation, the cooperation by defendants, and lack of cooperation by [the plaintiff] show a clear record of delay and contempt on the part of [the plaintiff] warranting dismissal." *Id.* at 887.

In short, an examination of current Eleventh Circuit case law exemplifies just how "elastic" the concept of "excusable neglect" truly is. *See Pioneer*, 507 U.S. at 392 (" 'excusable neglect' . . . is a somewhat 'elastic concept' "). Although some district courts in this circuit continue to deny Rule 60(b)(1) motions in which the movant relies on "attorney negligence" to show "excusable neglect," the Eleventh Circuit's *post-Pioneer* precedent emphasizes that when deciding a Rule 60(b)(1) motion "[p]rimary importance should be accorded to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration." *Riney I*, 77 F.3d at 1325 (citing *Cheney*, 71 F.3d at 850). Moreover, some of the district court cases finding that excusable neglect cannot be

premised on "attorney error, or general negligence" rely on *pre-Pioneer* precedent.[5] In light of the more recent Eleventh Circuit opinions, this Court considers the *Pioneer* factors as they relate to the facts of this case.

### B. The *Pioneer* Factors

The Court first considers the potential prejudice to Defendants and the interests of efficient judicial administration. *See id.* Defendants do not offer any evidence that Plaintiff's delay in filing the Case Management Report has prejudiced them. Instead, Defendant Legal Advocacy Services argues, "Justice is not accomplished by giving Skinner, [a lawyer-plaintiff, admitted to practice in this very forum since 2003,] yet a third chance to live up to her obligations, and we are all prejudiced when those who know better choose not to do so." (Doc. No. 27.) While it is true that Plaintiff is an attorney licensed to practice in the State of Florida, and that "we all" suffer some consequences from other's actions or inactions, those facts are not relevant to the Court's consideration of whether there is "discernable prejudice" to Defendants based on Plaintiff's failure to file a Case

---

[5] For example, in *Lender*, 519 F. Supp. 2d at 1223, the district court cites: (1) *Box 111 Firetower Rd.,* 920 F.2d at 792, which was published in 1991 and relies on *Solaroll,* 803 F.2d 1130, which was published in 1986; (2) *Ake v. Mini Vacations, Inc.* 174 F.R.D. 110, 112 (M.D. Fla. 1997), which, although published in 1997, does not consider the *Pioneer* factors and instead relies on *Solaroll*; and (3) *Abbey v. Mercedes-Benz of N. Am., Inc.,* No. 04-80136, 2007 WL 879581, at *1 (S.D. Fla. Mar. 20, 2007), which relies on an opinion from the District of Connecticut, *Carrcello v. TJX Cos.*, 192 F.R.D. 61, 64 (D. Conn. 2000), which cites a Southern District of New York opinion, *Andree v. Ctr. for Alt. Sentencing and Emp't Serv., Inc.*, No. 92 Civ 626, 1993 WL 362394 (S.D.N.Y. Sept. 14, 1993), that does not consider the *Pioneer* factors. Contrarily, some courts in this district have recognized that *Solaroll* and pre-*Pioneer* case law is no longer good law. *See U.S. v. Weiss,* No. 698–cr–99, 2010 WL 750348, at *4 (M.D. Fla. Mar. 4, 2010). Indeed, although the Eleventh Circuit did not expressly abrogate particular pre-*Pioneer* cases, in *Riney I,* 77 F.3d at 1325, it stated, "To the extent that our past decisions interpreting excusable neglect apply an unduly strict standard in conflict with *Pioneer*, they are no longer controlling precedent."

Management Report.

Defendant Legal Advocacy Center also contends that Defendants should not be "subjected to endless litigation and motion practice on account of Plaintiff's disrespect for the rules and the Court's Order." (Doc. No. 29, p. 5.) It relies on *Dunn v. Prudential Ins. Co. of Am.,* No. 8:10-cv-1626, 2011 WL 1298156 (M.D. Fla. Apr. 4, 2011), to support this contention. In *Dunn*, the court found that there "would be at least some prejudice" to the plaintiff if the Court set aside the default judgment it entered when the defendant failed to respond to the complaint because she "would be required to begin prosecuting claims against [the defendant] seven months after she properly served [it], and after she obtained a final judgment." *Id.* at *3. The same cannot be said in this case, where there has been no final judgment.[6]

---

[6] The Court finds it necessary to clarify that its May 23, 2012 Order dismissed this action **without prejudice**, pursuant to Local Rule 3.10. Although the Court specifically cited the Local Rule in its April 5, 2012 Show Cause Order (Doc. No. 19), it did not reference the Rule again in its May 23, 2012 Order (Doc. No. 25). Instead, the Court simply ordered that the case be "dismissed for failure to prosecute." (Doc. No. 25.) While Local Rule 3.10 plainly states that this Court may dismiss an action for failure to prosecute, a dismissal "for failure to prosecute" may also be pursuant to Rule 41(b) or the Court's "inherent power to manage its docket." *See Betty K. Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005). Under Rule 41(b), on which the parties seemingly assume the Court based its May 23, 2012 Order, "an involuntary dismissal for failure to prosecute is an adjudication on the merits, '[u]nless the dismissal order states otherwise.'" Fed. R. Civ. P. 41(b); *see Weston v. St. Petersburg Police Dep't*, No. 8:09-cv-495, 2010 WL 3154096, at *2 (M.D. Fla. Aug. 9, 2010). Contrarily, courts that have considered whether dismissal pursuant to Local Rule 3.10 is an "adjudication on the merits," unless the order specifically states otherwise, have found that it is not. *See Universal Imports, Inc. v. Federal Express Corp.*, No. 8:08-cv-309-T-30TGW, 2008 WL 2952843, at *1 (M.D. Fla. July 30, 2008) ("Unlike Federal Rule 41(b), Local Rule 3.10 does not state that dismissal is an adjudication on the merits. Thus Plaintiff's complaint in the instant case is not barred by res judicata."); *see also Les Chateaux Condo. Ass'n, Inc*., No. 8:11-cv-1452-T-33TGW, 2012 WL 254062, at *3 (M.D. Fla. Jan. 27, 2012). The Court intended the dismissal to be pursuant to Local Rule 3.10, and without prejudice to Plaintiff filing a new action. (*See* Doc. Nos. 19, 25.)

11

There are essentially two courses of action that could follow from the Court's decision on Plaintiff's Motion to Vacate. Either way, the outcome to Defendants will be substantially the same: they may have to continue to litigate this suit.[7] If the Court denies Plaintiff's Motion, she will likely re-file this action, and have sixty (60) days from the time she serves either Defendant with her new complaint to meet with them to establish a Case Management Report.[8] If the Court grants Plaintiff's Motion, it can (and will) require Plaintiff to file the Case Management Report within two weeks, allowing this case to proceed towards an adjudication on the merits as expeditiously as possible. The latter course is not only more efficient from a judicial administration standpoint, but may also enable Defendants to avoid potential hardships caused by further delay of the resolution of this matter.

Next, the Court finds Defendant Legal Advocacy Center's suggestion that they will be prejudiced if the Court grants the Motion because they will be "subjected to endless litigation and motion practice" unavailing. (Doc. No. 29, p. 5.) For one, this argument does not speak to "the risk of adverse consequences resulting from the delay itself." *Yang,* 435 F. App'x at 844. The focus of this inquiry must be on the prejudice caused by Plaintiff's failure to file a Case Management Report by the May 11, 2012 deadline imposed in the Court's April 5, 2012 Order. (Doc. No. 19.) As stated above, regardless of the Court's

---

[7] The Court uses the term "may" because if Plaintiff fails to comply with any further Orders of the Court, this case will be dismissed **with prejudice**. Alternatively, Plaintiff may choose to voluntarily dismiss this action if she simply does not want to engage in, or cannot put forth, the diligent effort required to litigate an action in federal court.

[8] *See* M.D. Fla. R. 3.05(c)(2)(B) ("Counsel and any unrepresented party shall meet within 60 days after service of the complaint upon any defendant, or the first appearance of any defendant, regardless of the pendency of any undecided motions, for the purpose of preparing and filing a Case Management Report in the form prescribed below.")

12

resolution, Plaintiff will have the opportunity to continue this litigation, should she so choose.

Moreover, Defendants have not engaged in **any** motion practice thus far. To date, it is clear that Defendants have not devoted considerable time or resources preparing to defend this action. They have not been languishing in a state of uncertainty waiting for Plaintiff to comply with discovery requests or to respond to any dispositive motions. Further, Plaintiff has not evaded their attempts to communicate with her. In fact, it appears Defendants were in contact with Plaintiff's counsel every couple of months since this action was filed, indicating that Defendants had no reason to assume that Plaintiff had decided to dismiss her claims against them. (*See e.g.,* Doc. No. 27, p. 7.) Finally, this is not a case in which there is a dispute over a tangible item of value, which might be diminished or increased based on a delay in the litigation. *Cf. United States v. White 1981 Race Corvette,* 704 F. Supp. 872, 878 (N.D. Ind. 1989).

Turning next to whether Plaintiff acted in good faith, the Court finds this factor to be neutral as between the parties. The record does not contain any evidence that Plaintiff's failure to meet with Defendants and file the Case Management Report was in bad faith or for an improper strategic purpose. Accordingly, the record is silent on the issue of good faith.

Lastly, Court finds the reasons espoused by Plaintiff and her counsel for failure to file a Case Management Report rather paltry and would be hard-pressed to vacate its May 23, 2012 Order if Defendants had suffered any "discernable prejudice" from her delay. On balance, however, the Court finds that any prejudice to Defendants resulting from Plaintiff's delay in filing the Case Management Report is minimal, that there has been no showing

13

that either she or her counsel acted in bad faith, as contrasted with negligence, and that the interests of efficient judicial administration weigh strongly in favor of granting the Motion to Vacate. Plaintiff will be given a final opportunity to have this action resolved on the merits.

### C. Mr. DeLoach's General Appearance Under Local Rule 2.03

The Court finds that Mr. DeLoach's filing of the Motion to Vacate (Doc. No. 26) constitutes a "general appearance" on Plaintiff's behalf. Local Rule 2.03(a) (emphasis added) instructs:

> Every pleading or paper of any kind filed by an attorney in this Court shall conform and be subject to the requirements of Rule 11, Fed. R. Civ. P., and unless otherwise expressly stated therein, **shall constitute a general appearance on behalf of the persons or parties for whom the pleading or paper is filed.**

As Plaintiff's counsel, Mr. DeLoach shall not "abandon [this] case . . . or withdraw as counsel . . ., except by written leave of Court obtained after giving ten (10) days' notice to the party or client affected thereby, and to opposing counsel." M.D. Fla. R. 2.03(b). Each and every paper that Mr. DeLoach files with this Court shall conform to the requirements of Rule 11, all other applicable Federal Rules of Procedure, the Local Rules, and this Court's Orders.

### CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED:**

1) Plaintiff's Verified Motion to Vacate Order of Dismissal (Doc. No. 26) is **GRANTED.**

2) The Court **VACATES** its May 23, 2012 Order (Doc. No. 25) dismissing

14

this case for Plaintiff's failure to prosecute, pursuant to Local Rule 3.10.

3) The parties' counsel **shall meet in person** to create a Case Management Report on or before Monday, July 23, 2012.[9] The parties shall utilize the Case Management Report attached to this Order.

4) Plaintiff's counsel shall file the Case Management Report, signed by respective counsel for all parties, on or before July 25, 2012. Failure to comply with these directives, any future Court Order, the Middle District of Florida's Local Rules, or the Federal Rules of Civil Procedure will likely result in **dismissal of this action with prejudice**.

5) The Clerk is directed to re-open this file, and retain Mr. Earnest A. DeLoach, Jr. on the docket as counsel for Plaintiff.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 10, 2012.

*[signature]*

ROY B. DALTON, JR.
United States District Judge

---

[9] Local Rule 3.05(c)(2)(B) instructs: "Unless the Court orders otherwise, parties represented by counsel are permitted, but are not required, to attend the case management meeting."

Copies to:
Counsel of Record

Attachments:
Case Management Report form